UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD HART,<br><br>  Plaintiff,<br><br>  v.<br><br>KIMBERLYN YOUNG, et al.,<br><br>  Defendants. | No. 2:14-cv-02732 JAM DB<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, Richard Hart, is a state prisoner proceeding pro se and in forma pauperis with a complaint under 42 U.S.C. § 1983.  Therein, plaintiff asserts an access-to-courts claim under the First Amendment and a due process claim under the Fourteenth Amendment.  The gist of plaintiff's claims is that defendants violated his federal rights by discontinuing a leather-craft program and deliberately thwarting his appeals challenging its discontinuation.

Defendants move to dismiss.  Defendants argue that plaintiff did not have a liberty or property interest in the leather-craft program or in a particular grievance procedure.  Further, defendants argue that plaintiff has not shown actual injury due to the allegedly improper processing of his grievances.

////

////

////

1

Plaintiff has inadequately alleged that he had a liberty or property interest in the leather-craft program. Furthermore, plaintiff has inadequately alleged that defendants interfered with his ability to appeal the program's discontinuation. Accordingly, as discussed below, defendants' motion to dismiss should be granted.

I.     BACKGROUND

    A.     Factual Allegations

Plaintiff is an inmate at California State Prison, Solano ("SOL"). (Compl. at 2 (ECF No. 1).) Defendant Young is the associate warden at SOL. (Id.) Defendant Cervantes is the appeals coordinator at SOL. (Id.)

In late 2012, Young visited the "inmate handicraft leather program" at SOL's gymnasium, where plaintiff was present. (Id. at 3.) Young announced that she hated leather and that the tools in the gym made her cringe every time she saw them. (Id.) Plaintiff told Young that the program had been going on for many years and that there had been "no incidents of any kind . . . regarding the tools." (Id.) Young responded, "The potential is still there." (Id.) Shortly thereafter, Young persuaded the administration at SOL to cancel the program. (Id. at 4.)

In November 2012, the handicraft manager, Mr. Balanon, informed plaintiff that the program had been discontinued. (Id.) Mr. Balanon also informed plaintiff that Associate Warden Wamble told him that "any appeals by the inmates should be directed directly to [Wamble]," not Young. (Id.)

Plaintiff filed an informal appeal "known as a Form 22" with Wamble. (Id.) Thereby, plaintiff sought to find out whether Wamble had told Balanon that appeals had to be filed with Wamble. (Id.) Wamble never responded to the informal appeal.

"After multiple attempts to contact . . . Wamble on this issue," plaintiff filed a formal appeal, or Form 602. (Id.) Therein, plaintiff asked "staff to answer [his] informal . . . request." (Id.)

After plaintiff filed the formal appeal, he had "a series of back and forth communications, rejections, and cancellation[s]" with defendant Cervantes. (Id.) Plaintiff alleges that Cervantes engaged in this back-and-forth to "harass, dissuade, and delay [his] attempts at appealing the

arbitrary attack on the leathercraft program." (Id.) Further, plaintiff alleges that Cervantes sought to "deflect responsibility" for the failure of SOL officials to comply with appeals procedures. (See id.) During this process, plaintiff frequently referenced his self-styled "Sixth Amendment Right to Access the Courts." (Id.)

Four months after plaintiff filed "his initial appeals," Wamble "issued a memorandum" responding to plaintiff's communications. (Id.) Apparently, this memorandum suggested alternatives to the leather-craft program. (See id. at 4–5.) Cervantes allowed plaintiff to treat this memorandum as an answer to "his appeal[s] from four months prior." (Id. at 5.)

"Plaintiff took this instruction and filed an appeal." (Id.) "The . . . appeal was heard at the First Formal Level[] and the Second Formal Level . . . ." (Id.) The appeals examiners cited "budgetary concerns and space limitations" to justify the discontinuation of the leather-craft program. (Id.) However, throughout the appeals process, Young used the gym for "self-help programs." (Id.) Ultimately, Young was "unsuccessful at gaining the space for her own personal agendas, and . . . the space is now being used to store toilet paper and soap." (Id.)

When plaintiff filed his appeal "to the Third Level of Review, the appeal was cancelled due to time constraints." (Id.) "Plaintiff filed an appeal of the cancellation, and that too was denied." (Id.)

Plaintiff alleges that Young "used her position of authority, and her personal and professional relationships with other administrative staff at [SOL], to pursue her personal agendas." (Id.) Further, plaintiff alleges that "those same agents intentionally used their own positions of authority to deny plaintiff his right of access to the court." (Id.) Additionally, plaintiff alleges that "he had a liberty interest in the handicraft leather program that was protected." (Id.) According to plaintiff, Young's concern that the tools created a security issue was "irrational." (Id.) Plaintiff also alleges that the appeals examiners' justifications for the discontinuation of the leather-craft program (i.e., budgetary concerns and space limitations) were irrational. (See id.)

////

////

3

**B.     Procedural Background**

Plaintiff filed his complaint on November 20, 2014. (Compl. (ECF No. 1).) Plaintiff asserted § 1983 claims for violations of the Sixth[1] and Fourteenth Amendments. (Id. at 3.)

On March 25, 2016, the court entered an order (ECF No. 15) adopting findings and recommendations issued on December 18, 2015 (ECF No. 8). The court found that the complaint stated "potentially-cognizable claims for review pursuant to 42 U.S.C. § 1983." (Id. at 2.)

On December 9, 2016, defendants moved to dismiss. (Mot. Dismiss (ECF No. 26).) Defendants argue that plaintiff's due process claim fails because he does not have a protected liberty interest in the "continuation of the leather-crafting program." (Mem. Supp. Mot. Dismiss at 4 (ECF No. 26-1).) Likewise, defendants argue that plaintiff's access-to-courts claim fails because he does not have a constitutional right to a specific grievance procedure. (Id. at 7 (citation omitted).) Furthermore, defendants argue that both plaintiff's due process and access-to-courts claims fail because he does not sufficiently explain how the alleged delay in processing his appeals prevented from filing a timely appeal. (Id. at 6–7.) Additionally, defendants argue that plaintiff's access-to-courts claim fails because he did not allege that he "suffered an actual injury by being shut out of court." (Id. at 7 (citations omitted).)

Plaintiff opposed defendants' motion to dismiss on January 20, 2017. (Opp'n (ECF No. 29).) Plaintiff argues that he has a protected liberty interest in the leather-craft program. To support this argument, plaintiff suggests that the discontinuation of the program is tantamount to an irrational, and hence unlawful, prison regulation. (See id. at 2–4 (citing Turner v. Safley, 482 U.S. 78 (1987)).) Further, citing California state cases, plaintiff argues that the decision to cancel the program was an "arbitrary adjudication" that deprived him of due process. (Id. at 4.)

Additionally, plaintiff asserts that "'policies and practices and 'mutually explicit understandings' may create interests protected by due process" and suggests that the program constituted such a practice or understanding. (Id. at 4 (citing Perry v. Sindermann, 408 U.S. 593,

---

[1] Plaintiff's Sixth Amendment claim is based on the allegation that defendants violated his "Right to Access the Courts." (Compl. at 4 (ECF No. 1).) Such a claim is properly brought under the First Amendment. See, e.g., Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005) (citations omitted). Therefore, the undersigned treats this claim as a First Amendment claim.

1    601 (1972)).) Moreover, plaintiff argues that he had a liberty interest in the program because "the
2    regulations . . . permitted [him] to invest a great deal of money, time, and resources into his hobby
3    craft." (Id. at 5.) Similarly, plaintiff asserts that "the loss of money, work, professional
4    advancement . . . , and clientel[]e" injured him. (Id.)
5         Regarding his access-to-courts claim, plaintiff asserts that Cervantes caused him to
6    untimely file his appeal at the first formal level, which caused his appeal to be cancelled at the
7    third formal level. (See id. at 6.) In addition, plaintiff argues that the cancellation of his appeal
8    injured him because it precluded him from exhausting administrative remedies. (Id. at 6 (citation
9    omitted).) Plaintiff reasons that, if the court finds that he failed to state a cognizable access-to-
10   courts claim, defendants will argue that he did not comply with the prison appeals process and,
11   therefore, failed to exhaust his claims. (See id. at 6–7.)

12   **II.    STANDARD OF REVIEW**

13        Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for motions to dismiss for
14   "failure to state a claim upon which relief can be granted." In considering a motion to dismiss
15   pursuant to Rule 12(b)(6), the court must accept as true the allegations of the complaint in
16   question, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted), and construe the
17   pleading in the light most favorable to the plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421
18   (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). Still, to survive
19   dismissal for failure to state a claim, a pro se complaint must contain more than "naked
20   assertion[s]," "labels and conclusions," or "a formulaic recitation of the elements of a cause of
21   action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007). In other words,
22   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory
23   statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, a claim
24   upon which the court can grant relief must have facial plausibility. See Twombly, 550 U.S. at
25   570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the
26   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
27   Iqbal, 556 U.S. at 678.
28   ////

1    In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Outdoor Media Grp., Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation omitted).

### III.   LEGAL ANALYSIS

#### A.   Fourteenth Amendment—Due Process

The Fourteenth Amendment reads that no State shall "deprive any person of life, liberty, or property, without due process of law, and protects the individual against arbitrary action of government." Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 459–60 (1989) (citation omitted). Courts "examine procedural due process questions in two steps[.]" Id. "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State[.]" Id. (citation omitted). "[T]he second examines whether the procedures attendant upon that deprivation were constitutionally sufficient[.]" Id. (citation omitted).

Regarding the first step, liberty interests in the prison context are "generally limited to freedom from restraint which . . . imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483–84 (1995). Both before and after Sandin, courts in the Ninth Circuit have consistently stated that prisoners lack a liberty or property interest in educational and vocational programs.[2]

---

[2] Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985) ("If the plaintiff's due process claim hinges on a property interest in the vocational instruction course, his claim similarly lacks substance in law and fact because there is no constitutional right to rehabilitation."); Orr v. Peterson, No. 3:14–cv–00833–AC, 2015 WL 2239590, at *4 (D. Or. May 12, 2015) (citations omitted) ("[C]ourts have repeatedly held that prisoners do not have a constitutional right to rehabilitation, including rehabilitative programs and services."); Standley v. Ryan, No. CV 10–1867–PHX–DGC (ECV), 2012 WL 3288728, at *14 (D. Ariz. Aug. 13, 2012) (citation omitted) ("There is no constitutional

Nonetheless, a state may create a liberty interest by establishing prison regulations "that impose substantive limitations on the exercise of official discretion." Baumann v. Ariz. Dep't of Corrs., 754 F.2d 841, 844 (9th Cir. 1985) (citation omitted). Such regulations must entail "particularized standards or criteria [to] guide the State's decisionmakers," id. (citation omitted), such as "an imperative that mandates action unless certain clearly-defined exceptions are found to apply," Chaney v. Stewart, 156 F.3d 921, 925 (9th Cir. 1998) (citation omitted). See also Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (suggesting that prisoners have no due process rights to "rehabilitative programs" that prison officials have "full discretion to control").

Regarding handicraft programs, California law provides as follows: "[Prisons] may establish a handicraft program based on, but not limited to, the following conditions: (1) possible threat to facility security, (2) space availability, (3) sufficient staffing, and (4) available funding. Cal. Code Regs. tit. 15, § 3100(a).

In this case, plaintiff has failed to state a facially plausible due process claim. Plaintiff has not adequately alleged that he had a liberty or property interest in the leather-craft program. The loss of the program does not involve a restraint that imposes an atypical and significant hardship on him. And courts have consistently ruled that prisoners lack liberty and property interests in educational and vocational programs. Granted, section 3100(a) of the California Code of Regulations contemplates the creation of prison handicraft programs. However, this regulation imposes no substantive limits on prison officials' discretion to discontinue such programs.

Section 3100(a) states that prisons "may" establish handicraft programs, which gave Young discretion to discontinue the program. See, e.g., Jama v. Immigration and Customs Enforcement, 543 U.S. 335, 346 (2005) (citation omitted) ("The word 'may' customarily connotes discretion."). None of the other provisions of section 3100 suggest otherwise. See generally Cal. Code Regs. tit. 15, § 3100. Accordingly, plaintiff has failed to state a cognizable

---

right to rehabilitation, and the lack of educational or vocational programs does not constitute a constitutional violation."); Johannes v. County of Los Angeles, No. CV 02–03197–SVW (VBK), 2011 WL 6149253, at *14 (C.D. Cal. Apr. 8, 2011) (citations omitted) ("Plaintiff does not have [a] liberty interest in any vocational placement, nor does Plaintiff have a property interest in any such job[.]"), report and recommendation adopted, No. CV 02–03197–SVW (VBK) (C.D. Cal. Dec. 5, 2011).

7

due process claim.

Plaintiff's counterarguments lack merit. Plaintiff essentially argues that the discontinuation of the leather-craft program is an irrational regulation that offends due process. (See Opp'n at 2–4 (ECF No. 29) (citing Turner, 482 U.S. 78).) But plaintiff misapplies Turner. There, the Supreme Court held that, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. This case does not involve a regulation that infringes plaintiff's recognized constitutional rights (e.g., a regulation limiting an inmate's right to marry or correspond with other inmates). See id. at 81–82. Rather, this case involves a discretionary decision to end a handicraft program in which plaintiff has no recognized liberty or property interest. Plaintiff's citations to California cases are likewise inapposite, partly because he asserts a federal claim.

Plaintiff's argument that he had a liberty or property interest in the leather-craft program based on a practice or understanding with defendants is equally unavailing. (See Opp'n at 4 (ECF No. 29) (citing Perry, 408 U.S. at 601).) Perry did not involve prison conditions, but rather, whether a college professor had a property interest in continued employment based on the college's de facto tenure program. See Perry, 408 U.S. at 599–600. Moreover, plaintiff has not alleged the existence of such a practice or understanding other than the existence of the program itself. Therefore, his allegations do not create a plausible inference that such a practice or understanding existed.

Plaintiff's argument that he had a liberty or property interest in the program because he was allowed to invest considerable time and resources in his craft also fails. Plaintiff does not allege that defendants deprived him of the leather crafts that he made. Similarly, plaintiff alleges that the loss of work, money, clientele, and professional advancement in his craft harmed him. As noted, however, courts have repeatedly ruled that inmates lack due process rights to educational and vocational programs. And plaintiff has not alleged that he was deprived of work-time credits that the leather-craft program entitled him to. See Brodheim v. Rowland, 993 F.2d

716, 717 (9th Cir. 1993). Accordingly, plaintiff's due process claim is not cognizable.[3]

### B. First Amendment—Access to Courts

Prisoners have a First Amendment right to "file prison grievances." Rhodes, 408 F.3d at 567 (citation omitted); see also Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) (citations omitted). Therefore, interference with the grievance process may, in certain circumstances, implicate the First Amendment. Such a claim would be based on the theory that interference with the grievance process resulted in a denial of the inmate's right to access to the courts, a right that includes petitioning the government through the prison grievance process. See Lewis v. Casey, 518 U.S. 343, 346, 354 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), overruled on other grounds by Shaw v. Murphy, 532 U.S. 223 (2001). However, the right of access to the courts only requires that prisoners have a "reasonably adequate" capability of bringing challenges to sentences or conditions of confinement. Lewis, 518 U.S. at 356–57. Furthermore, prisoners must show "actual injury" to prevail on an access-to-courts claim. Id. at 349–55. Actual injury is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a claim." Id. at 349.

Here, plaintiff has failed to state a cognizable access-to-courts claim. Plaintiff has not alleged that he lacked a reasonably adequate capability of brining his case to court. Indeed, plaintiff "was able to successfully file this § 1983 action." Downing v. Graves, No. 14–16308, 2016 WL 4437623, at *2 (9th Cir. Aug. 23, 2016) (unpublished memorandum). Moreover, plaintiff has not adequately alleged that Cervantes' purported delay in processing his appeals actually injured him. For instance, plaintiff has not alleged that the purported delay prevented

---

[3] Nor would defendants' allegedly improper processing of plaintiff's appeals create a liberty or property interest because "inmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citation omitted). See also Bingham v. Thomas, 654 F.3d 1171, 1177–78 (11th Cir. 2011) ("[A] prison grievance procedure does not provide an inmate with a constitutionally protected interest."); Jones v. Cannedy, No. 2:10–cv–2174 KJM KJN P, 2012 WL 3260457, at *5 (E.D. Cal. Aug. 8, 2012) ("[P]laintiff cannot state a cognizable civil rights claim based solely on allegations that prison officials ignored, inadequately responded to, or failed to properly process, plaintiff's administrative grievances."), report and recommendation adopted, No. 2:10–cv–2174 KJM KJN P, 2012 WL 3260457 (E.D. Cal. Sep. 25, 2012).

him from meeting a court filing deadline.

Granted, plaintiff argues that Cervantes' delay will cause his case to be dismissed for failure to exhaust. This outcome may constitute actual prejudice. Bradley, 64 F.3d at 1279 (preventing prisoner from filing grievance may violate right to access courts if prisoner must "exhaust the established prisoner grievance procedure before securing relief in federal court"). However, plaintiff did not allege this injury in his complaint. Therefore, it will not be considered. Schneider v. Cal. Dep't of Corrs., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (citations omitted) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

Moreover, even had plaintiff alleged this injury, he still would not be able to show actual prejudice. His due process claim is not cognizable. Consequently, even if plaintiff overcame an exhaustion bar by alleging that Cervantes made him file his administrative appeal late, he still would not be able to present an "arguable" claim. Lewis, 518 U.S. at 353 n.3; see also Christopher v. Harbury, 536 U.S. 403, 415 (2002) ("[T]he constitutional right of access . . . is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court.").

Additionally, even had plaintiff stated a cognizable access-to-courts claim against Cervantes, he still would not have stated a cognizable access-to-courts claim against Young. Plaintiff does not allege that Young processed his appeals. Nor does he allege that Young contributed to Cervantes' purported delay in processing his appeals, let alone that Young had an improper motive to do so. Accordingly, plaintiff has not stated a facially plausible First Amendment claim against Young.

In sum, plaintiff has not sufficiently pleaded that he lacked a reasonably adequate capability of bringing his case to court. Furthermore, plaintiff has not adequately alleged that Cervantes' purported delay in processing his appeals actually injured him. Additionally, plaintiff has not adequately alleged that Young contributed to Cervantes' purported delay. Accordingly, plaintiff has not stated a cognizable First Amendment access-to-courts claim.

**C.     Leave to Amend**

"Federal Rule of Civil Procedure 15(a) provides that courts should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). "[T]he rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant." Crowley v. Bannister, 734 F.3d 967, 977–78 (9th Cir. 2013). "Presumably unskilled in the law, the pro se litigant is far more prone to make errors in pleading than the person who benefits from the representation of counsel." Id. at 978 (citation omitted). Therefore, "before a district court may dismiss a pro se complaint for failure to state a claim, the court must provide the pro se litigant with notice of the deficiencies of his or her complaint and an opportunity to amend the complaint prior to dismissal." McGuckin v. Smith, 974 F.2d 1050, 1055 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Accordingly, plaintiff should be given an opportunity to file an amended complaint.

If plaintiff files an amended complaint, he must clearly set forth the factual allegations supporting his due process claim under the Fourteenth Amendment and access-to-courts claim under the First Amendment. However, plaintiff may not change the nature of the suit by adding additional parties to the case or asserting additional claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Any amended complaint must be written or typed so that it is complete in itself without reference to any earlier filed complaint. E.D. Cal. L.R. 220. This is because an amended complaint supersedes any earlier filed complaint, and once an amended complaint is filed, the earlier filed complaint no longer serves any function in the case. See Forsyth v. Humana, 114 F.3d 1467, 1474 (9th Cir. 1997) (the "'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" (quoting Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967))). The court cautions plaintiff that failure to comply with the Federal Rules of Civil Procedure, this court's Local Rules, or any court order may result in this action being dismissed. See E.D. Cal. L.R. 110.

////

////

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss (ECF No. 26) be granted;

2. Plaintiff's due process claim under the Fourteenth Amendment be dismissed without prejudice; and

3. Plaintiff's access-to-courts claim under the First Amendment be dismissed without prejudice.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated: April 3, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:11
DLB1/prisoner-civil rights/hart2732.mtd fr